## McCLELLAN v. HUMPHREY.

No. 228.

United States District Court
M. D. Pennsylvania.

April 13, 1949.

John D. McClellan, pro se.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., and Lt. Col. Thayer Chapman, Office of the Judge Advocate General, of Washington, D.C., for respondent.

FOLLMER, District Judge.

This habeas corpus proceeding was instituted by John D. McClellan, a military prisoner at United States Penitentiary, Lewisburg Pennsylvania, who was convicted by a General Court-Martial on charges of rape, desertion and escape from confinement.

512

Petitioner predicated his allegation of illegal restraint on ten separate issues, which may be briefly summarized as follows,

1. Noncompliance with the provisions of Article of War 70, 10 U.S.C.A. § 1542, relating to pre-trial investigation.

2. The additional charge and specification thereunder was not properly sworn to inasmuch as the officer taking the accuser's oath was the Acting Assistant Adjutant of the Command.

3. Denial of counsel of his own choice and ineffective representation by the appointed defense counsel who did defend him.

4. Counsel who did defend petitioner was not a duly appointed defense counsel on the court which tried petitioner.

5. Denied the right to have witnesses summoned in his behalf at the trial.

6. Petitioner was handcuffed during his trial before the Court Martial.

7. Conviction based on incompetent evidence.

8. Trial Judge Advocate improperly amended the record of the trial after the court adjourned.

9. Misconduct of Trial Judge Advocate in presenting case of the prosecution.

10. Board of Review erred in not granting petitioner a new trial.

The Court-Martial record is in evidence and oral testimony was presented upon the hearing in this Court, including that of the Investigating Officer, the Trial Judge Advocate, Defense Counsel, and four prisoners of the United States Penitentiary at Lewisburg, Pennsylvania, who were requested by petitioner.

We have here a case where a soldier in the Army of the United States has been convicted by a Court-Martial after an eminently fair trial, upon overwhelming evidence of guilt, of a brutal, sadistic and heinous offense against a thirteen and one-half year old girl; where the sentence has been approved and confirmed after the record of the trial was painstakingly reviewed by the agencies provided by law for that purpose, but where it is now claimed that certain errors occurring prior to and during the trial vitiated the entire proceedings.

It is the opinion of this Court, after a careful and thorough study of the Court-Martial record and seeing and hearing the witnesses on the stand in this proceeding, that the matters complained of are mere flea bites and completely without merit. To grant them credence would, in the language of Judge Hand speaking for the court in United States ex rel. McCann v. Thompson, 2 Cir., 144 F.2d 604, 608, 156 A.L.R. 240, certiorari denied 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630, "grant immunity to the relator for a crime, of which, as the record now stands, he has been lawfully convicted; an immunity based in no sense upon the merits of the trial, but only upon their regularities in the accusation. Nothing could more effectively defeat the interests of justice."

Considering the alleged errors seriatim,

1. Failure to provide a fair and impartial investigation as required by Article of War 70.

An exhaustive examination of this case had been conducted by the Army's Criminal Investigation Division (C. I. D.), statements of a number of witnesses were taken and given by the Chief of this division to the investigating officer as statements of witnesses who would be available to the prosecution. The investigating officer did not personally interview any of the witnesses. He did, however, submit all of the statements to the petitioner, together with a statement petitioner had given the C. I. D. investigator. He was thus fully and completely apprised of the evidence that he would have to meet, and was given an opportunity to cross-examine the witnesses. He refused the offer. He furthermore indicated he did not desire witnesses called on his own behalf.

I am firmly of the opinion that the thorough and impartial investigation required by Article of War 70 was complied with.[1]

2. The additional charge and specification were not properly sworn to inasmuch as the officer taking the accus-

---

[1] Henry v. Hodges, 2 Cir., 171 F.2d 401; Becker v. Webster, 2 Cir., 171 F.2d 762.

er's oath was the Acting Assistant Adjutant of the Command.

This complaint is completely without merit.

Petitioner was tried in 1946 at which time Article of War 114 had been amended to include among those authorized to administer oaths the assistant adjutant or personnel adjutant of any command, A.W. 114, as amended by the Act of December 14, 1942, c. 730, 56 Stat. 1050, 10 U.S.C.A. § 1586. The oath in question was administered by Lieutenant Johnson, who at the time was the Acting Assistant Adjutant. The officer acting for the time being in place of the Assistant Adjutant is to all intents and purposes the Assistant Adjutant and has all the powers of such.[2]

██ In any event, the Judge Advocate General has consistently held:

"In the absence of objection by the defense, the fact that the charges were sworn to before an officer not competent to administer an oath does not invalidate the trial. CM 146230; CM 146536; CM 144896; CM 148709; CM 146349. (Maddox 9 B.R. 277, 279)."

In this case the Court-Martial Record is devoid of any such objection.

In Nickerson CM 172002, the Board of Review said:

"The provisions of A.W. 70 requiring the charges and specifications to be sworn to, was intended for the benefit of the accused in order that he might not be subjected to frivolous or malicious prosecution and if he did not object to the irregularity and the accusation is sustained by the proof, the fact that the charge and specifications were not sworn to would not in itself injuriously affect any of the substantial rights of the accused."

The courts have uniformly placed considerable reliance on opinions of the Judge Advocate General dealing with questions of military law.[3]

██ However, even assuming, for the sake of argument, that either of the above contentions were sound, the question here would be purely academic. There was no attack upon the validity of the oath to the original charge and since the charge of rape justifies the sentence, it is immaterial whether petitioner was lawfully convicted of the additional charge. The sentence was a general sentence. Consequently, if petitioner stands convicted of only one good charge which itself justifies the sentence, it makes no difference that he may have been erroneously convicted of others.[4]

██ 3. Denial of counsel of his own choice and ineffective representation by appointed defense counsel.

Petitioner had requested a Lieutenant Fidellow as his defense counsel. The fact is that Lieutenant Fidellow's unit had been alerted to proceed to Germany and actually did depart on the very day petitioner was brought to trial. Lieutenant Fidellow was the only officer with his command at that time and in the opinion of his superiors could not be spared for extra duties as defense counsel.[5] Petitioner was notified of this fact, convinced that he could not have Fidellow as his counsel and expressed satisfaction with Lieutenant Neville. As to the qualifications of the latter, he was a graduate of the University of Ottawa, Canada, and Harvard Law School, a practicing attorney for twelve years, formerly attached to the Antitrust and Criminal Divisions of the Department of Justice, Washington, D. C., and with considerable previous experience in the Army as Trial

---

[2] Aderhold v. Menefee, 5 Cir., 67 F.2d 345, 346.

[3] Stout v. Hancock, 4 Cir., 146 F.2d 741, certiorari denied 325 U.S. 850, 65 S.Ct. 1086, 89 L.Ed. 1971; Hironimus v. Durant, 4 Cir., 168 F.2d 288.

[4] Claassen v. United States, 142 U.S. 140, 146–147, 12 S.Ct. 169, 35 L.Ed. 966; Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489.

[5] Article of War 17, 10 U.S.C.A. § 1488, provides that the accused shall have the right to be represented by counsel of his own selection "military if such counsel be reasonably available". This discretion lies with the appointing authority and in the absence of a gross abuse of such discretion cannot be attacked. The Supreme Court has consistently held that the exercise of such discretion will not be reviewed by the courts. Martin v. Mott, 12 Wheat. 19, 6 L.Ed. 537; Mullan v. United States, 140 U.S. 240, 11 S. Ct. 788, 35 L.Ed. 489; Swain v. United States, 165 U.S. 553, 17 S.Ct. 448, 41 L.Ed. 823

Judge Advocate and also defense counsel. An examination of the Court-Martial record convinces me that in Lieutenant Neville petitioner had the benefit of the services of a thoroughly competent, aggressive and conscientious attorney, and that furthermore the record gives every indication of adequate preparation for trial on the part of defense counsel. This complaint is completely without merit.

■ 4. Counsel who did defend petitioner was not a duly appointed defense counsel on the court which tried petitioner.

The Court-Martial record indicates that Lieutenant Neville was duly appointed as a member of a General Court-Martial in the capacity of Assistant Defense Counsel by special order of the Commanding Officer, No. 169, dated July 24, 1946.[6]

The testimony indicated that Lieutenant Neville had served in previous Courts-Martial, in some in the capacity of Trial Judge Advocate and in others in the capacity of defense counsel. General Courts-Martial are appointed for the trial of such persons as may properly be brought before them. There is no testimony here that the instant case, or any other case for that matter, was assigned to more than one Court-Martial at the same time. Having in mind that this Court-Martial was set up in war time and in a foreign country, experienced legal personnel may or may not have always been available. While there is a definite statutory inhibition against one serving as Trial Judge Advocate and as defense counsel in the same case unless expressly requested by the accused,[7] I find no restriction on one assigned as Trial Judge Advocate in one case serving even contemporaneously therewith as defense counsel in another case. The complaint is without merit.

■ 5. Denied the right to have witness summoned in his behalf at trial.

Petitioner claims that he requested by letter through Army channels to the Commanding General, Western Base Section, that a witness, Technician Fourth Grade Sergeant Salvadore DeGesso, be summoned to testify for the defense at petitioner's trial and that no reply was received by petitioner as to whether or not the witness requested would be available.

At the hearing before this Court, Lieutenant Neville testified that acting on the request of petitioner he turned the name of the requested witness, together with such information as was available in relation to the said witness, over to the Witness Service; that this was the agency best equipped to locate witnesses desired at Courts-Martial; that "all of the lawyers had a feeling that if the Service could not find any witness that that particular witness could not be found."[8] This does not present the situation where it has been demonstrated that a certain requested witness is available and has not been summoned, or where it has been demonstrated that no effort had been made to locate the witness. The Agency charged with this particular function was given all the available information and could not locate the individual requested.

I am of the opinion there is no merit to this complaint primarily because the burden here is on the petitioner not only to show the availability of the witness but the materiality of his testimony, and this burden the petitioner has not met;[9] and for the further reason that the evidence before me showed conclusively that this witness was not available.

■ 6. Petitioner was taken before the General Court-Martial under unnecessary restraint and improperly clothed for the purpose of making his identity as the accused unmistakable, and was further handcuffed during the trial.

Witnesses called by petitioner who are now serving sentences on convictions by Courts-Martial and who were prisoners at the same place as petitioner in France prior to and during his Court-Martial, testified

---

6 Respondent's Exhibit No. 1 (Record of Trial by General Court-Martial) Page 102.

7 10 U.S.C.A. § 1482.

8 Transcript of Testimony, Page 59.

9 Robinson v. United States, 76 U.S. App.D.C. 29, 128 F.2d 322.

before this Court that the red uniform complained of by petitioner was standard and the same as worn by all prisoners in that detention barracks.[10]

■ As to the handcuffs, it appears that this petitioner had acquired some distinction as an escape artist prior to his Court-Martial. He had escaped several times between the date of the commission of the offense on September 3, 1945, and the date of his trial on July 25, 1946, and while it adds nothing to his distinction in this line at the time of his trial, he escaped immediately after his trial while the record was being reviewed. He was handcuffed when taken into the room where the Court-Martial was held and he did have his right hand cuffed to his chair during the trial, except that he was not handcuffed in any manner while testifying.

In view of this man's known escape record, together with the fact that the trial was held within the confines of the Paris Detention Barracks where it was not permissible for the court room to be protected by armed guards, I agree with the Board of Review "that the shackling of the accused was reasonable and proper, and did not constitute a violation of his substantial rights." [11]

■ I find no merit whatsoever in this contention. In any event, this is not a proper subject for review in habeas corpus, except possibly under circumstances showing such a gross abuse of discretion as to vitiate the trial and those circumstances certainly were not present at this trial.

■ 7. Conviction based on incompetent evidence.

In habeas corpus the courts are not concerned with the sufficiency of the evidence to support the conviction,[12] nor with questions involving the admissibility of evidence, its admission or exclusion.[13] There is no merit in this contention.

■ 8. The Trial Judge Advocate improperly amended the record of the trial after the court adjourned.

This involves a correction made to the trial record (C.M.R. 118) by the Assistant Trial Judge Advocate after the trial and prior to authentication thereof.[14]

In connection with corrections of the record TM 27-255, Military Justice Procedure, Pages 123-124, has this to say:

"Correction. Until the record has been authenticated and forwarded to the reviewing authority, it is not complete and the president or trial judge advocate ' is at liberty to correct the transcript of proceedings to make it conform to the facts by erasure, interlineation or otherwise, initialing corrections made. * * *"

In any event, the record discloses that the same was examined by defense counsel (actually by a member in lieu of the defense counsel because of his absence) and authenticated by the court.[15] There is nothing to this contention.

■ 9. Misconduct of Trial Judge Advocate.

The complaint here is primarily directed to the summation of the Trial Judge Advocate. This was a military and not a civil trial; there was no jury to be swayed by forensics nor to be prejudiced against the accused by reason of the nature of the crime. Admitting the vigor of the summation, my reaction to that is best expressed in the language of the court in United States v. Buckner, 2 Cir., 108 F.2d 921, 928, certiorari denied 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016,

---

[10] Transcript of Testimony, Pages 29, 83, and 85.

[11] Such restraint is permissible where there is "reasonable apprehension of an attempt to escape." Winthrop's Military Law and Precedents, 2nd Ed. (1920 Reprint) Page 164. See also McDonald v. United States, 8 Cir., 89 F.2d 128; Seadlund v. United States, 7 Cir., 97 F. 2d 742.

[12] Ex parte Steele, D.C.M.D.Pa., 79 F. Supp. 428.

[13] Bigrow v. Hiatt, D.C.M.D.Pa., 70 F. Supp. 826, affirmed 3 Cir., 168 F.2d 992.

[14] Transcript of Testimony, Page 70.

[15] Respondent's Exhibit No. 1 (Record of Trial by General Court-Martial) Page 221.

"Our task, however, is to consider it not from isolated outbursts, but as a whole, and to determine whether it deprived the defendants of a fair trial, cautioned by the suggestion of the Berger case that reversal for misconduct is less clearly indicated where the proof is strong and convincing. Strong and convincing it is here; * * *. Indeed, the evidence was such as to justify vigorous prosecution and summation."

█ 10. Board of Review erred in not granting petitioner a new trial.

A careful review of the entire record in this case discloses that all of the appellate proceedings prescribed by Congress for appellate review of Court-Martial convictions have been complied with and that petitioner's contention that he was denied the right to appeal is completely without merit.

Finally, it is difficult to conceive of a set of circumstances more revolting or more inhumane than are presented in this case. The petitioner, a married man and the father of three small children, in company with another soldier, whom he could only identify by the name of "Lennie", stands convicted of raping a thirteen and one-half year old French girl, theretofore by medical testimony a virgin, not once but twice himself and standing by while his companion raped her once, leaving her cruelly torn and bruised and requiring about three weeks of hospitalization. His only defense was that of mistaken identity and the alibi that he was with his mistress that night.[16] He was accorded a fair trial and was unusually ably represented; he was convicted and the record of his trial has been painstakingly reviewed; he has set forth a large number of matters which in effect he claims constitute a deprivation of due process, all of which has required a much longer review on my part than the case deserves.

The Petition for Writ of Habeas Corpus is accordingly denied and the Rule to Show Cause is dismissed.

---

[16] In an effort to explain certain damaging evidence against him and involving blood stained clothing, he introduced as his alibi that he was with his mistress at that time under circumstances which may here be referred to as disgusting.