Petition of James FAIOLA for Writ of Habeas Corpus, and for Leave to Proceed in Forma Pauperis.

Civ. A. No. 596–60.

United States District Court
D. New Jersey.
July 8, 1960.

WORTENDYKE, District Judge.

The indicated petitioner is presently in the custody of the Superintendent of the New Jersey State Prison Farm, in the course of serving sentences imposed upon him by the Morris County Court on November 12, 1954, after conviction by a jury upon an indictment charging armed robbery and assault with intent to rob, committed on January 22, 1954, within the jurisdiction of the sentencing court. A copy of the indictment is annexed to petitioner's brief.

Under date of April 25, 1960 petitioner mailed to the Honorable William F. Smith, Chief Judge of this Court, addressed to him at Trenton, New Jersey, certain documents designated respectively (1) "Motion for leave to proceed in forma pauperis and for assignment of counsel in forma pauperis," (2) "Verified

petition for writ of habeas corpus," and (3) "Brief of defendant-petitioner." These documents were, in due course, referred to the writer of this opinion, in conformity with the practice followed in this multi-judge court. On May 10, 1960 the petitioner was advised that it would be necessary for him to pay to the Clerk of this Court a filing fee of $5 as required by 28 U.S.C. § 1914(a). In the course of subsequent correspondence, the petitioner, in a letter to this Court, questioned the amount of money reported by the Superintendent of the prison standing to petitioner's credit, which was sufficient for compliance with the statutory filing fee requirement. The documents which petitioner sought leave to file were retained by the writer of this opinion pending compliance with the payment directive above mentioned. The filing fee required was received by the Clerk on July 5, 1960.

The petitioner predicates his assertion that his present imprisonment is illegal upon the following contentions:

(1) He was denied a fair trial in violation of the Fourteenth Amendment by the trial court's restriction of cross-examination of a "self-confessed" accomplice called as a witness for the State.

(2) He was deprived of access to an appellate court because of inability to pay filing fees and cost of transcript, and was illegally denied leave to proceed in forma pauperis.

(3) There was unreasonable delay in bringing petitioner to trial.

(4) His assigned counsel was incompetent and failed to fulfill his professional obligations to petitioner.

(5) He was subjected to police brutality during his pretrial imprisonment.

(6) His case was prejudiced by subsequent admissions of perjury by State witnesses.

In his brief in support of his present petition for a writ of habeas corpus, petitioner cites fifty-five State and Federal judicial decisions, eleven text writers, the Revised Statutes of Illinois, the 39th Clause of Magna Carta, numerous provisions of the respective Constitutions of the United States of America and of the State of New Jersey, the Revised Rules of the New Jersey Courts, certain Statutes of New Jersey, and the works of seven authors on legal subjects. The brief consists of approximately forty-three typewritten pages, to which is annexed an appendix comprising an additional twenty-three typewritten pages.

It is apparent from an examination of the pending petition, the record of prior proceedings disclosed in the appendix annexed thereto, and the appendix filed by the State on petitioner's appeal to the Appellate Division of the Superior Court of New Jersey from the order of the Morris County (New Jersey) Court denying his petition for writ of habeas corpus, that the petitioner is seeking from this Court substantially the same relief which he has been unsuccessful in obtaining through the Courts of New Jersey and the Supreme Court of the United States. Because of this threshold situation, it becomes appropriate, if not essential, for this Court to determine whether and to what extent it may review the facts which have been found and adjudicated by the Courts of New Jersey.

■ In the case of Brown v. Allen, 1953, 344 U.S. 443, at page 458, 73 S.Ct. 397, at page 407, 97 L.Ed. 469, it is stated:

"So far as weight to be given the proceedings in the courts of the state is concerned, a United States district court, with its familiarity with state practice is in a favorable position to recognize adequate state grounds in denials of relief by state courts without opinion. A fortiori, where the state action was based on an adequate state ground, no further examination is required, unless no state remedy for the deprivation of federal constitutional rights ever existed."

And, 344 U.S. at page 460, 73 S.Ct. at page 409:

"Jurisdiction over applications for federal habeas corpus is controlled

by statute. The Code directs a court entertaining an application to award the writ. But an application is not 'entertained' by a mere filing. Liberal as the courts are and should be as to practice in setting out claimed violations of constitutional rights, the applicant must meet the statutory test of alleging facts that entitle him to relief. \* \* \* In § 2243 and § 2244 we think it (the word 'entertained') means a federal district court's conclusion, after examination of the application with such accompanying papers as the court deems necessary, that a hearing on the merits legal or factual is proper. \* \* \* Even after deciding to entertain the application, the District Court may determine later from the return or otherwise that the hearing is unnecessary."

And further, 344 U.S. at page 463, 73 S.Ct. at page 410:

"Applications to district courts on grounds determined adversely to the applicant by state courts should follow the same principle—a refusal of the writ without more, if the court is satisfied, by the record, that the state process has given fair consideration to the issues and the offered evidence, and has resulted in a satisfactory conclusion."

And, 344 U.S. at page 464, 73 S.Ct. at page 411:

"It is necessary to exercise jurisdiction to the extent of determining by examination of the record whether or not a hearing would serve the ends of justice. \* \* \* As the state and federal courts have the same responsibilities to protect persons from violation of their constitutional rights, we conclude that a federal district court may decline, without a rehearing of the facts, to award a writ of habeas corpus to a state prisoner where the legality of such detention has been determined, on the facts presented, by the highest state court with jurisdiction, whether through affirmance of the

judgment on appeal or denial of post-conviction remedies."

The principles expressed in the foregoing quotations were more recently (1958) applied by the Fourth Circuit Court of Appeals in Newsom v. Smyth, 261 F.2d 452, certiorari denied 359 U.S. 969, 79 S.Ct. 883, 3 L.Ed.2d 837.

I am therefore called upon to review the prior record of proceedings in the petitioner's case in order to determine whether I should entertain the petition, assign counsel to petitioner's representation, and hold a hearing. 28 U.S.C. § 2243; Howard v. United States, 8 Cir., 1960, 274 F.2d 100; Ex parte Milligan, 1866, 4 Wall. 2, 71 U.S. 2, 18 L.Ed. 281.

The first asserted violation of his constitutional rights is to be found in petitioner's contention that the trial court before which he was convicted, improperly limited petitioner's cross-examination of a "self-confessed accomplice" called as a witness by the State. Petitioner contends that such limitation of cross-examination amounted to a deprivation of due process of law in violation of the Fourteenth Amendment, and a denial of petitioner's right to be confronted with witnesses as guaranteed by the Sixth Amendment to the Constitution. He does not, however, argue this contention in his accompanying brief. It is, of course, elementary that a trial judge is under a duty to impose reasonable limitations upon the scope of the cross-examination of a witness and the propriety of such limitations as he may impose thereon is within his sound discretion. United States v. Sweeney, 3 Cir., 1959, 262 F.2d 272. The propriety of a judge's ruling upon evidence is a matter for review on appeal or by writ of error. Except in extraordinary circumstances, the writ of habeas corpus cannot be utilized for purposes of such a review. United States ex rel. Saunders v. Myers, Warden, 3 Cir., 1960, 276 F.2d 790; Ex parte Zwillman, 3 Cir., 1931, 48 F.2d 76, 78, citing Harlan v. McGourin, 218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101. There appear to be no exceptional circumstances in this case which would take it

out of the foregoing rule. Assuming, although it nowhere so appears, that the trial judge abused his discretion in limiting or curtailing defendant's cross-examination of any of the State's witnesses, United States v. Manton, 2 Cir., 1938, 107 F.2d 834, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012, and further assuming, although in this respect also it does not so appear from the record before me, that an appropriate objection was made to the trial court's ruling so as to save the point for appeal, petitioner made no effort to appeal, but applied to the trial court for a new trial. The motion was denied on January 6, 1955.

Under the caption "Statement of Facts" incorporated in his brief, petitioner says that on March 21, 1955 he attempted to appeal from the denial of his motion for a new trial, but was met by request of the Clerk of the appellate court for payment of a filing fee. Petitioner adds that he "was unable to pursue this matter any further, due to lack of funds to purchase the necessary stamps to mail any further petitions." He apparently sought no relief in forma pauperis, and abandoned further attempts to review the denial of his motion for a new trial. Petitioner further represents that on April 18, 1955 he noticed a further motion for a new trial upon the grounds that (1) his sentence was illegal, (2) he was innocent of the crime charged, and (3) "in the interests of justice a new trial should be granted." Upon the return of notice of this motion a plenary hearing was held by the trial judge at which the petitioner attended with experienced and competent counsel, assigned to represent him by the court. The motion was based upon the petitioner's contention that he had newly discovered evidence which he desired to present. Upon that hearing petitioner called as witnesses in his behalf two of his alleged accomplices, Charles E. Graves and William H. Carmon, each of whom had signed an affidavit in which the affiant stated that Faiola had nothing to do with the offenses for which he was indicted. Graves had not testified upon petitioner's trial, although he had previously given the police voluntary statements implicating Faiola. He refused to explain the inconsistency of his affidavit therewith. Carmon, however, had testified at petitioner's trial, and, although on direct examination on the hearing on return of the motion for a new trial he had affirmed his affidavit which tended to exonerate Faiola, he finally, on cross-examination, retracted and conceded that the testimony which he had given on petitioner's trial which implicated the petitioner was true, and that his affidavit and other testimony on the motion was false. He explained that the reason he had signed the affidavit was because he was requested to do so by petitioner, and desired to assist the latter in his efforts to obtain a new trial. Although he was represented by counsel on the hearing on the motion, petitioner was invited to supplement his attorney's direct and cross-examination by putting questions himself. He refused, however, to avail himself of that privilege. In response to the Court's further inquiry as to whether petitioner had additional evidence to present, he stated: "I would like to get witnesses to air the whole case and bring out the police brutality of certain detectives and a few who are right here in this court room who worked me over and starved me down at the county jail until I entered the prison I was 117 pounds. I'd like to air the whole case out. I had no opportunity to notify any witnesses, just being told that I was coming to court within a day or two." The Court then reminded petitioner that there were five additional witnesses then present in the court room, and invited Faiola to ask any of them any questions, either directly or through his attorney, which he might desire to put. These five witnesses consisted of the chief and another of the county detectives, the warden of the county jail, a police officer, and the assigned attorney who had conducted petitioner's trial. Upon his indication of desire to question his said former attorney, the attorney was sworn and ex-

amined by the petitioner. The record of the testimony of the attorney conclusively refutes petitioner's contentions that he was forced to trial after insufficient notice, that he was deprived of an opportunity to obtain witnesses, and that he was inadequately and incompetently represented by counsel. After completion of the examination of his trial attorney, the Court again inquired whether petitioner desired to examine the other witnesses who had been produced for purposes of the hearing, by the State. Petitioner again refused to avail himself of the proffered opportunity, and the assigned attorney who appeared for him upon the hearing on the motion advised the Court that there was nothing further to be presented in petitioner's behalf. Upon completion of the hearing on September 29, 1955, the trial Judge denied petitioner's motion for a new trial. After reviewing the evidence presented on the motion the Court expressed the conclusion that: "I have no credible new evidence before me, if in fact, it could be characterized as new evidence, which would lead me to open up the door so that you can have a new trial. I have no believable evidence before me."

Within a month (October 18, 1955) following the denial of this motion for a new trial, petitioner moved for a reconsideration thereof and rehearing thereon, and assigned as a ground for such relief insufficiency of notification to petitioner of the hearing held on the motion for a new trial on September 29, 1955 to permit him to produce the witnesses whom he desired to present on that occasion. Annexed to his motion papers for reconsideration and rehearing were four affidavits, each similar in form, in which the affiant deposed that he or she would have appeared voluntarily at the hearing on the motion for new trial if given notice thereof, but that no notice to appear had been given. The motion for reconsideration and rehearing was denied. Petitioner took no steps to review the denial of either of the last-foregoing motions.

On March 21, 1957, petitioner, as an indigent defendant, applied to the court in which he was tried, for a transcript of the proceedings upon the trial. In denying this application on April 17, 1957, the trial Judge suggested that petitioner make his application to the appellate court.[1] Petitioner never followed

---

1. Rule 1:2–7 of the Supreme Court of New Jersey, made applicable to appeals taken to the Superior Court of New Jersey, Appellate Division, by Rule 2:-2–5 of the latter court, provides, in part, as follows:

"1:2–7. Appeals by Indigent Persons

"(a) Where an appellant or petitioner for certification or a respondent, by reason of poverty seeks relief from the payment of filing fees in the appellate court, the deposit for costs, and the expense of printing briefs, appendices, petitions, or motions, he may file without fee a verified petition with the court setting forth the facts relied upon for such relief. The petition for leave so to proceed must be accompanied by a short statement setting forth the judgment sought to be appealed from or as to which certification is sought, the court wherein the judgment was entered, the date of its entry, and the respects in which the judgment is claimed to be erroneous, and must also be accompanied by a copy of the opinion or opinons of the court or courts below. Eight copies of the petition, which may be legible typewritten copies, shall be filed. * * * The court may, if the facts warrant, waive the payment of filing fees and the deposit for costs and permit any such petitioner to file briefs and appendices thereto, which may be legibly typewritten, multigraphed or mimeographed copies on paper of good quality not larger than 8½ inches by 11 inches, and which shall be bound or stapled in the upper left-hand corner only. They shall in all other respects conform to the requirements of Rule 1:7.

*      *      *      *      *

"(c) Where any indigent person convicted of any crime takes an appeal he may file a verified petition with either the trial court or the appellate court pursuant to Chapter 134 of the Laws of 1956 (N.J.S. 2A:152–17) showing that he is indigent and that a copy of the transcript of the record, testimony and proceedings at the trial is necessary for the prosecution of his appeal, and such court, being satisfied of the fact of his indigency and of his need for the transcript, may certify the expense and amount thereof to the county treasurer.

that suggestion. However, on October 16, 1957, petitioner successfully moved the trial court for correction of sentence imposed under each of the counts of the indictment of which he stood convicted. No further steps were taken by petitioner until February 14, 1958, when, upon an affidavit of poverty, he unsuccessfully applied to the assignment Judge of the Superior Court of New Jersey, then presiding in Morris County, for assignment of counsel to represent petitioner in proceedings which he contemplated to review his conviction upon the contention that the conviction resulted from perjured testimony. Judge (now Justice) Hall in denying this latest application, on February 27, 1958, found that it involved the same charge which petitioner had made before a judge of the County Court; that the charge had been investigated by the Prosecutor, and had been adjudicated, adversely to petitioner, by the trial Court's order of September 29, 1955 denying the motion for new trial based upon the same contentions. From the order denying his motion for assignment of counsel petitioner sought leave to appeal in forma pauperis to the Appellate Division of the Superior Court of New Jersey, which on March 26, 1958, refused to grant such leave because petitioner was in possession of sufficient funds with which to prosecute the appeal (see footnote 1, ante). Apparently accepting this disposition of his application, petitioner made a new approach in the form of a petition to the Assignment Judge of the Law Division of the Superior Court of New Jersey for a writ of habeas corpus. In that petition he contended that (1) he was confined to jail for eleven months before being tried; (2) a witness for the State gave false testimony against him; (3) "he was denied his witnesses"; (4) he was denied representation of effective counsel; (5) he was kept in solitary confinement and brutally beaten while awaiting trial; (6) the trial transcript was withheld from him. That petition was duly referred to the Judge of the County Court, counsel was assigned to represent petitioner, and a hearing was held, at which petitioner and his witness Sykes testified as did also the Warden of the jail in which petitioner had been confined awaiting trial, and the Captain of Detectives in the Morris County Prosecutor's office, and the Chief of said detectives. The petition for habeas corpus was denied by order of September 22, 1958. From this order petitioner noticed an appeal on October 4, 1958. His petition for assignment of counsel was denied by the Appellate Division on November 25, 1958, but the same Court ordered, on February 21, 1959, that a transcript of the habeas corpus proceedings be furnished to petitioner at County expense.

Although not set forth in his petition, or in his brief or appendix thereto, the order of the Morris County Court denying Faiola's petition for habeas corpus was affirmed by the Appellate Division of the Superior Court of New Jersey on September 18, 1959, as appears from the certified copy of the mandate on affirmance in that case. Faiola next petitioned the Supreme Court of New Jersey for leave to appeal from the decision of the Appellate Division of the Superior Court of New Jersey. The Supreme Court treated the petition for leave to appeal as a petition for certification, and denied the same on the merits by order filed December 14, 1959. Faiola's petition to the Supreme Court of the United States for a writ of certiorari was denied on April 18, 1960. Faiola v. New Jersey, 362 U.S. 956, 80 S.Ct. 870, 4 L.Ed.2d 872.

■■■■ It is, of course, beyond argument that the denial of petitioner's petition for writ of certiorari by the Supreme Court of the United States "has no legal significance whatever bearing on the merits" of his present claims, Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 601, 94 L.Ed. 761, but merely constitutes

Such petition may be joined with an application to proceed in forma pauperis made pursuant to paragraph (a) of this

rule and with an application for the assignment of counsel made pursuant to Rule 1:12–9(c)."

the last step in fulfillment of the requirement of exhaustion of remedies prescribed by 28 U.S.C. § 2254 for cases involving persons in custody pursuant to the judgment of a State court. See United States ex rel. Smith v. Baldi, 3 Cir., 1951, 192 F.2d 540, certiorari denied 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549. However, as pointed out in the Baldi case, 192 F.2d at page 544, neither the Circuit Court of Appeals nor the District Court is "an appellate court for the correction of errors under state law. Each point raised by the * * * (petitioner) is to be tested by whether it alleges a violation of rights under the United States Constitution: nothing more. That these allegations have been decided on the merits by the highest state court is a fact to be given great weight by a district court in passing upon petitions for habeas corpus. But that fact does not relieve the federal court of the duty to pass upon the merits of the petition." The writ may not be used in this court in lieu of appeal or as a writ of error to review proceedings in the State court. Daniels v. Crawford, D.C.N.C. 1951, 99 F.Supp. 208, affirmed 4 Cir., 1951, 192 F.2d 763, affirmed 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

I can find in the record of proceedings before me no basis for petitioner's second contention in support of his present application, that he was deprived of access to an appellate court because of inability to pay filing fees and cost of transcript, and was illegally denied leave to proceed in forma pauperis. The record incontrovertibly discloses that petitioner's attempt to appeal on March 21, 1955 from the denial of his motion for a new trial which was met by the request of the Clerk of the appellate court for the payment of a filing fee, was abandoned by the petitioner without invoking available means for obtaining leave to proceed in forma pauperis. (See footnote 1, ante.) After that abandonment, he elected to make a second motion for a new trial as a means of reviewing the denial of his previous motion for a new trial. Failing of success upon the second of these motions, and upon his motion for reconsideration and rehearing thereof and thereon, he made no attempt to obtain appellate review. Approximately a year and four months thereafter petitioner made application, as an indigent defendant, for a trial transcript and upon the denial of that application, took no further steps in his case for a period of about seven months, and then successfully moved only for correction of sentence. When Faiola was unsuccessful in his attempt to obtain leave to appeal in forma pauperis from the denial of his second motion for a new trial in March 1958, he then sought a writ of habeas corpus in the appropriate New Jersey court upon contentions asserting deprivations of constitutional guarantees similar to those asserted here. Upon that application and his subsequent successive procedures, petitioner, although unsuccessful at each stage, was accorded due process of law in every respect. His present contentions that he was deprived of access to an appellate court because of inability to pay filing fees and costs of transcript, and that he was illegally denied leave to proceed in forma pauperis, find no foundation in the record. The remedy which he presently seeks is not available where, as in the record before me, it conclusively appears that no constitutional or statutory right of the petitioner has been infringed.

Petitioner's reliance upon Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 588, 100 L.Ed. 891, is misplaced. As stated at the outset of the opinion in that case, "The question presented here is whether Illinois may, consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment, administer * * * (the statute providing that writs of error in all criminal cases are writs of right), so as to deny adequate appellate review to the poor while granting such review to all others." Griffin and his fellow-petitioner, after conviction in the State trial court, moved for a "certified copy of the entire record, including a stenographic transcript of the proceed-

ings" to be furnished them without costs. They alleged that they were without means of paying the necessary fees for such records which were required for the prosecution of their appeal. By statute in Illinois, indigent defendants sentenced to *death* are provided with a free transcript of the trial proceedings at the expense of the county where the conviction was had, but in all other criminal cases, defendants needing a transcript, whether indigent or not, must themselves buy it. Another Illinois Act authorized indigent persons to obtain a free transcript of trial proceedings to obtain appellate review of *constitutional questions* but not of other alleged trial errors. The State of Illinois conceded, in Griffin, before the Supreme Court of the United States, that the petitioners therein needed a transcript in order to get adequate appellate review of their alleged trial errors. There was no contention that the petitioners were dilatory in their efforts to secure appellate review, or that the denial of review by the State Supreme Court was for insufficiency of the allegations of trial error. Although the Supreme Court of the United States vacated the judgment of the Supreme Court of Illinois, which had affirmed the dismissal of petitioners' appeal from their convictions, Mr. Justice Black, speaking for the Supreme Court of the United States, expressly stated (351 U.S. at page 20, 76 S.Ct. at page 591): "We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants. * * The Illinois Supreme Court appears to have broad power to promulgate rules of procedure and appellate practice. We are confident that the State will provide corrective rules to meet the problem which this case lays bare." The Supreme Court of New Jersey has provided such rules and the procedure prescribed thereby was available to the present petitioner had he sought to make use of it. The determination of whether or not the present petitioner was indigent was appropriately within the authority of the State court to which the petitioner's application was, or should have been, made. The determination of such a question of fact is not within the jurisdiction of this Court upon the present petition.

▮ Faiola is here attempting to substitute his present application in place of an appeal. He is also attempting thereby to test the sufficiency of the conduct of proceedings against him and the propriety of his treatment prior to his trial by a court having jurisdiction, before a jury of his peers, and upon his pleas of not guilty to the offenses charged in the indictment. From the judgment of conviction against him he has been accorded every aspect of due process of law as far as opportunities for review, both appellate and otherwise, are concerned. The record is barren of any evidence of his having suffered any deprivation of his constitutional rights.

▮ A writ of habeas corpus may not be allowed as an indirect method of disciplining law enforcement officers for misconduct. United States ex rel. Holly v. Commonwealth of Pennsylvania, D.C. Pa.1948, 81 F.Supp. 861, affirmed per curiam, 3 Cir., 1949, 174 F.2d 480.

▮ Petitioner cannot be heard now, nor could he have been hard upon an appeal from the judgment of conviction, to complain that he was not accorded his constitutional right to a speedy trial, pursuant to the Sixth Amendment. See United States v. Sorrentino, 3 Cir., 1949, 175 F.2d 721, certiorari denied 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532, rehearing denied 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551. Having ultimately stood trial and been convicted, delay in bringing him to trial would have been reviewable on appeal. Neither errors of his counsel, if any, during the trial, nor police brutality, if any, while he was awaiting trial not productive of any statement, admission, conviction or plea of guilty, constitute such deprivation of petitioner's constitutional rights as would render his present confinement il-

legal. "Habeas corpus may not be used as a writ of error to correct an erroneous judgment of conviction of crime, but may be resorted to only where the judgment is void because the court was without jurisdiction to render it." McNally v. Hill, Warden, etc., 1934, 293 U.S. 131, 138, 55 S.Ct. 24, 27, 79 L.Ed. 238. Petitioner is in custody pursuant to a legal sentence imposed after conviction upon a jury trial of a valid indictment. Here, as in United States ex rel. Wright v. Myers, Warden, etc., D.C.Pa.1956, 142 F.Supp. 387, certiorari denied 350 U.S. 942, 76 S.Ct. 319, 100 L.Ed. 822, petitioner attempts to obtain a de novo trial of the same issues which were submitted to the New Jersey courts. Petitioner was accorded a full and fair hearing before the courts of the State, which amply protected his rights under the Constitution of the United States. On the face of the record before me, it appears affirmatively here, as in Brown v. Allen, supra, that petitioner's constitutional rights have been fully protected.

For the foregoing reasons it is hereby, on this 8th day of July, 1960, ordered that the respective petitions of James Faiola for (a) leave to proceed in forma pauperis, (b) for assignment of counsel, and (c) for a writ of habeas corpus, be and hereby are denied.